Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ARGENBRIGHT HOLDINGS IV, LLC,**<br><br>   Plaintiff,<br><br>   v.<br><br>**GATEWAY SECURITY, INC. and KURUS J. ELAVIA,**<br><br>   Defendants. | Civil No. 22–93 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

This action arises out of Plaintiff Argenbright Holdings IV, LLC's motions to compel the turnover of funds awarded to them in an arbitration proceeding. (D.E. Nos. 23 & 34). Defendants Gateway Security, Inc. and Kurus J. Elavia filed cross-motions to vacate Plaintiff's motions. (D.E. Nos. 25 & 37). Having considered the parties' submissions, the Court decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court **GRANTS** Plaintiff's motions to turn over funds and **DENIES** Defendants' cross-motions to vacate.

**I.    BACKGROUND**

On October 31, 2019, the parties entered into an Asset Purchase Agreement ("APA") in which Plaintiff agreed to purchase Defendants' contract with the Port Authority of New York and New Jersey. (D.E. No. 1-1 ("Pet.") ¶ 10). However, due to the COVID-19 pandemic, revenues dramatically dropped, and Plaintiff discovered that Defendants breached their warranties. (*Id.* ¶ 13). Accordingly, on January 22, 2021, Plaintiff sent Defendants a notice of purchase price adjustment and withheld additional compensation. (*Id.* ¶ 14). In response, on March 9, Defendants

1

initiated arbitration proceedings pursuant to the APA. (*Id.* ¶¶ 6 & 15). Plaintiff filed its response and counterclaim on March 23. (*Id.* ¶ 16).

On January 7, 2022, the arbitrator issued an award in favor of Plaintiff for $2,748,070.12. (*Id.* ¶¶ 18–19). On the same date, Plaintiff moved to confirm the arbitration award. (D.E. No. 4). Defendants did not oppose the motion. (*See* D.E. No. 9). On February 14, the Court confirmed the arbitration award. (D.E. No. 11).

Later that month, Plaintiff served Information Subpoenas on Defendants in order to execute the judgment and collect the award. (D.E. No. 14-2 ¶ 3). After Defendants failed to respond, Plaintiff moved to compel responses on March 28. (D.E. No. 14). On April 19, Magistrate Judge Hammer issued an order compelling responses to the subpoenas. (D.E. No. 22).

Three days later, on April 22, Plaintiff filed a motion to turn over funds from Defendant Elavia's bank accounts in the sum of $981,373.87. (D.E. No. 23). In response, Defendants filed a cross-motion to vacate the motion to turn over funds, claiming that the joint account is not subject to levy because Elavia's spouse, Purba Pal, solely owns over $500,000 in the account. (D.E. No. 25-1 ("Elavia Vacate Mot.") at 2).

On June 10, Plaintiff filed another motion to turn over funds from Gateway Security in the sum of $1,766,696.25. (D.E. No. 34). In particular, Plaintiff seeks third-party debts owed to Gateway Security from its contracts with the City of Jersey City, Newark Housing Authority, and Charles Schwab. (*Id.*). Defendants replied with another cross-motion to vacate, claiming that Plaintiff did not serve the proper writs under New Jersey law, that they did not receive notice of the writs in any event, and that Plaintiff is impermissibly seeking future funds. (D.E. No. 37-1, ("Gateway Vacate Mot.") at 1–2).

These motions are fully briefed.

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 69 governs the applicable procedure to enforce a money judgment. Rule 69 states in relevant part:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution— must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1).

Thus, as the forum state, New Jersey law controls the procedure on execution. "While New Jersey state procedural law governs writs of execution pursuant to Federal Rule of Civil Procedure 69, the Rule 'does not require strict adherence to state procedural law.'" *Sec. & Exch. Comm'n v. Brogdon*, No. 15-8173, 2020 WL 10964594, at *2 (D.N.J. Nov. 18, 2020 (quoting *Mitchell v. Lyons Pro. Servs., Inc.*, 727 F. Supp. 2d 120, 121 (E.D.N.Y. 2010)). Because strict adherence is not necessary, "substantial compliance with state procedures may be sufficient." *Id.*

New Jersey law requires that writs of execution be used to enforce judgments. *See* N.J. Ct. R. 4:59-1(a) (2020). New Jersey law also provides:

> [a]fter a levy upon a debt due or accruing to the judgment debtor from a third person, herein called the garnishee, the court may upon notice to the garnishee and the judgment debtor, and if the garnishee admits the debt, direct the debt, to an amount not exceeding the sum sufficient to satisfy the execution, to be paid to the officer holding the execution or the receiver appointed by the court, either in 1 payment or in installments as the court may deem just.

N.J. Stat. Ann. § 2A:17-63 (2022). Put simply, after a levy is placed on a debt of a judgment-debtor, and after the garnishee admits to the debt, the court may issue the payment of all of the debt held by the garnishee. *Id.*

3

## III. DISCUSSION

### A. Elavia

The Court first addresses Plaintiff's motion to turn over funds associated with Elavia's Chase Bank accounts. The only account contested by the parties is Elavia's account ending in 2300 ("2300 Account"), a joint account he shares with his wife Purba Pal. (Elavia Vacate Mot. at 2).

In order to obtain an order to turn over funds, a plaintiff must follow the proper procedure. As noted, "[t]he prerequisite to the entry of a turnover order is the issuance of a writ of execution for the purpose of a levy." *In re Paul*, No. 12-7855, 2013 WL 3446994, at *2 (D.N.J. Jul. 9, 2013) (citing N.J. Stat. Ann. § 2A:18-27). A writ of execution "shall remain valid and effective for the purpose of a levy, and shall be operative and effective against any goods and chattels levied upon, for two years from the date of its issuance, unless sooner satisfied." N.J. Stat. Ann. § 2A:18-27. The judgment-creditor must thereafter move for a turnover order, which a court must grant "when 'there has been a levy on a debt due [to] a judgment debtor and the garnishee admits the debt.'" *Paul*, 2013 WL 3446994, at *2 (quoting *PRA III, LLC v. Capital One, N.A.*, No. L-1424-07, 2009 WL 2176656, at *9 (N.J. Super. Ct. App. Div. 2009) (internal quotation marks omitted) (quoting N.J. Stat. Ann. § 2A:17-63)).

Plaintiff followed the proper procedures to compel the turnover of funds. On April 7, 2022, the U.S. Marshal executed a writ of execution on both of Elavia's Chase Bank accounts. (D.E. No. 19 at 2 (ECF pagination)). Plaintiff then filed a motion to turn over funds on April 22, after the writ of execution was served on the bank account. (D.E. No. 23). Finally, Chase Bank, as garnishee, admitted the existence of the debt within the meaning of N.J. Stat. Ann. § 2A:18-27 by failing to object to turning over the funds. "[W]here the garnishee does not expressly admit the

4

debt but fails to deny it or stands without answer upon that question at the hearing, the failure to deny it is tantamount to an admission of its existence within the meaning of the statute." *PRA III*, 2009 WL 2176656, at *10 (quoting *Beninati v. Hinchliffe*, 126 N.J.L. 587, 589, 20 A.2d 64 (E. & A. 1941)). "If service is properly made and no objection is filed by the debtor or the garnishee, the turnover order should be granted as a matter of course." *Id.* at *12 (citing *Morristown Mem. Hosp. v. Caldwell*, 775 A.2d 34 (N.J. Super. Ct. App. Div. 2001)). Therefore, Plaintiff is entitled to have the funds turned over.

Elavia does not dispute that Plaintiff followed the proper procedures. Instead, Elavia offers a twofold opposition: first, he maintains that Plaintiff has the burden to prove that he owns *all* funds in this account; second, he says his account is not subject to levy because his wife, Pal, is the owner of at least $500,000 worth the account's assets. (Elavia Vacate Mot. at 3–4). Neither argument is convincing.

Elavia's argument concerning the burden of proof contradicts New Jersey law. In *State ex rel. Allstate Insurance Co. v. Patel*, No. A-1437-18T3, 2019 WL 6598239 (N.J. Super. Ct. App. Div. Dec. 5, 2019), the Appellate Division held that a judgment-debtor, such as Elavia, bears the burden to prove that money in a joint account is solely owned by the co-owner of the joint account. *Id.* at *6. There, as here, the debtor claimed that his wife was the sole owner of the funds in their joint bank account. *Id.* at *5. A disagreement arose over who bore the burden of proof to establish sole ownership of funds in the joint account of the judgment-debtor. *Id.* at *3. The court held that the judgment-debtor had the burden of proof to show that the funds were not subject to levy because "[d]efendants were in the best position to offer proof regarding ownership of the joint bank account and bore the burden of proving that the funds subject to the turnover order belonged

5

to Patel's wife." *Id.* at *6. As in *Patel*, Elavia is in the best position to prove ownership of the joint bank account; accordingly, the burden is his to prove that the funds are not subject to levy.

For a contrary conclusion, Elavia cites *Banc of America Leasing and Capital, LLC v. Fletcher-Thompson, Inc.*, 179 A.3d 1058 (N.J. Super. Ct. App. Div. 2018). There, the Appellate Division explained that "[i]t could not be presumed 'that one depositing his [or her] own funds in a joint account in the names of himself [or herself] and another has thereby created a joint tenancy in the account.'" *Id.* at 1060 (alteration in original) (quoting *Esposito v. Palovick*, 101 A.2d 568, 571 (N.J. Super. Ct. App. Div. 1953)). However, in *Fletcher-Thompson*, the debtor's wife certified that "the funds in the joint account derive *solely* from her earnings." *Id.* (emphasis added). Therefore, in order to remove a levy on a joint bank account, the judgment debtor must show that the disputed funds are solely owned by the non-debtor third party, and the debtor bears the burden to prove that fact. This conclusion is confirmed by the Multiple Party Deposit Account Act, N.J. Stat. Ann. § 17:16I-4 (2022), which "creates a presumption that a joint account belongs to both account holders in equal shares," and further requires "a party [to] present proof of net contributions to the joint accounts" to rebut the presumption, *Patel*, 2019 WL 6598239, at *5.

Elavia fails to satisfy his burden. As a starting point, the Court notes that Plaintiff establishes that funds in the joint account are owned by Elavia. (D.E. No. 28 at 8 (explaining that "the 2300 Account . . . was the very account that Elavia, continuously over the course of twelve months, received at least $930,000 from Argenbright")). Elavia attempts to show that some of the funds in the 2300 Account belong solely to his wife by submitting a single check made out to his wife for the sale of a property, the proceeds of which were deposited in the 2300 Account. (*See* Elavia Vacate Mot. at 3–4; D.E. No. 25-2). Elavia claims his wife was the "sole" owner of the funds from the sale of that property and that he has no interest in the sale. (Elavia Vacate Mot. at

6

4). But there is no evidence that the 2300 Account contains only the proceeds of this sale, and indeed Plaintiff submits proof that it does not. (D.E. No. 28 at 8). Moreover, Elavia's claim that he has no interest in the property or the proceeds derived from its sale is not supported by the record. As Plaintiff points out, a simple public records search for the sale of this property shows Elavia was the "Grantor" of this property at the time of sale. (D.E. No. 28 at 3; D.E. No. 28-2, Ex. D).

Therefore, Elavia must turn over the funds in the 2300 Account.[1]

### B.     Gateway Security

The Court turns to the motion to turn over funds from Gateway Security—specifically, the debts due to Gateway Security from its contracts with Newark Housing Authority, City of Jersey City, and Charles Schwab. Defendants contest Plaintiff's request to turn over funds only as it pertains to Newark Housing Authority and the City of Jersey City. (Gateway Vacate Mot. at 1–2).

The standard to turn over funds associated with Gateway Security's contracts is the same as the standard associated with Elavia's bank accounts. *See* Section III.A, *supra*. As explained above, "[t]he prerequisite to the entry of a turnover order is the issuance of a writ of execution for the purpose of a levy." *Paul*, 2013 WL 3446994, at *2. A writ of execution "shall remain valid and effective for the purpose of a levy, and shall be operative and effective against any goods and chattels levied upon, for two years from the date of its issuance, unless sooner satisfied." N.J. Stat. Ann. § 2A:18-27. The judgment-creditor must thereafter move for a turnover order, which a court must grant "when 'there has been a levy on a debt due [to] a judgment debtor and the garnishee

---

[1] Elavia does not contest that the funds in the account ending in 7296 are solely his and presents no argument as to why they should not be turned over. (D.E. No. 28 at 3 n.2). Funds in that account, likewise, must be turned over.

admits the debt.'" *Paul*, 2013 WL 3446994, at *2 (quoting *PRA III*, 2009 WL 2176656, at *9 (quoting N.J. Stat. Ann. § 2A:17-63)).

Plaintiff has followed the proper procedures. In particular, Plaintiff issued proper writs of execution on March 28 and May 6, 2022. (D.E. Nos. 13 & 27). These writs were then executed by the U.S. Marshal on the Newark Housing Authority on March 29 and City of Jersey City on or after May 6. (D.E. No. 19 at 6; D.E. No. 35 ¶ 7; D.E. No. 39 at 3). Plaintiff then filed the motion to turn over funds associated with these contracts on June 10. (D.E. No. 34). Finally, the garnishees, Newark Housing Authority and the City of Jersey City, failed to object to turning over the funds despite receiving proper notice. They therefore admit the existence of the debt within the meaning of N.J. Stat. Ann. § 2A:18-27. *See PRA III*, 2009 WL 2176656, at *10, 12 (explaining that failing to object is tantamount to admitting the debt). Therefore, Plaintiff followed the proper procedures for the Court to grant its turnover request.

Defendants dispute none of the facts outlined above. Instead, they argue that the turnover of funds is improper because Plaintiff improperly used a writ of execution as opposed to a writ of attachment, they did not receive notice of the writs, and Plaintiff seeks to collect future payments. (Gateway Vacate Mot. at 1–3). These arguments are unconvincing.

First, the proper writ is a writ of execution, not a writ of attachment. Indeed, New Jersey law unambiguously provides that the proper mechanism "to enforce judgment or order for the payment of money and process to collect costs allowed by a judgment or order[] *shall be a writ of execution*." N.J. Ct. R. 4:59-1(a) (2020) (emphasis added). To support use of a writ of attachment, Defendants cite to N.J. Stat. Ann. § 2A:17-58, but that section only requires writs of attachment "*against nonresident debtors*." N.J. Stat. § 2A:17-58 (2022) (emphasis added). This statute is

thus inapplicable because both Gateway Security and Elavia are residents of New Jersey. (Pet. ¶¶ 2–3). Therefore, the writs of execution filed by Plaintiff (D.E. Nos. 13 & 27) were proper.

Second, Defendants received proper notice of the writs. The applicable local rule states, "[u]pon the electronic filing of a pleading or other document, the Court's ECF system will automatically generate and send a NEF [that is, a notice of electronic filing] to all ECF Filing Users associated with that case. Transmission of the NEF constitutes service of the filed document on Filing Users." L. Civ. R. 5.2(14)(b)(1). Plaintiff filed the writs on the ECF system before the U.S. Marshal issued them. (D.E. Nos. 13 & 27). Thus, Defendants received proper notice of the writs through their counsel.[2] (D.E. No. 39 at 5–6).

Third, Plaintiff does not seek the turnover of future, unearned income—rather, it seeks debt that is presently due to Gateway Security. The standard in New Jersey for what is subject to a writ of execution is as follows:

> [w]hen a judgment has been recovered in the Superior Court, and where any wages, debts, earnings, salary, income from trust funds, or profits are due and owing to the judgment debtor, or thereafter become due and owing to him, to the amount of $48.00 or more a week, the judgment creditor may, on notice to the judgment debtor unless the court otherwise orders, apply to the court in which the judgment was recovered, or to the court having jurisdiction of the same, and upon satisfactory proofs, by affidavit or otherwise, of such facts, the court shall grant an order directing that an execution issue against the wages, debts, earnings, salary, income from trust funds, or profits of the judgment debtor.

N.J. Stat. Ann. § 2A:17-50(a) (2005). Under New Jersey law, "a judgment creditor is entitled to obtain execution against a debtors 'debts' as well as earned income, trust fund income, and profits." *Cameron v. Ewing*, 38 A.3d 611, 616 (N.J. Super. Ct. App. Div. 2012). Debts are defined as "that which one person is bound to pay to another under any form of obligation." *Id*.

---

[2] Because Defendants received notice, the Court does not address whether notice is required in the first place. (*See* D.E. No. 39 at 6).

9

Plaintiff seeks funds that Gateway Security has already invoiced.[3] (D.E. No. 39 at 7). In other words, these debts are presently owed to Gateway Security—a judgment-debtor in this case. Thus, they are properly subject to execution by the judgment-creditor—Plaintiff. *See Cameron*, 38 A.3d at 615.

Because Plaintiff followed the proper procedures to have funds turned over, and because Defendants have not provided a persuasive objection, the Court grants Plaintiff's motion to turn over funds owned by and due to Gateway Security.[4]

## IV.   CONCLUSION

The motions to turn over funds (D.E. Nos. 23 & 34) are **GRANTED**. The cross-motions to vacate (D.E. Nos. 25 & 37) are **DENIED**. Appropriate Orders accompany this Opinion.

Date: July 20, 2022

_____
Hon. Esther Salas, U.S.D.J.

---

[3] For accounting purposes, an invoice is an account receivable, and an account receivable is "an account reflecting a balance owed by a debtor; a debt owed by a customer to an enterprise for goods or services." *Account receivable*, Black's Law Dictionary (11th ed. 2019).

[4] Plaintiff also requests the turnover of funds from Gateway Security's Charles Schwab account. (D.E. No. 34 at 1). Defendants do not contest turning over funds in this account. Funds in this account must, likewise, be turned over.